Walter Olie NOORLANDER,
Appellant,

v.

Dr. P. J. CICCONE, Director,
Appellee.

No. 73-1532.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 14, 1973.

Decided Dec. 27, 1973.

Walter Olie Noorlander, pro se.

Bert C. Hurn, U. S. Atty., and Freder-·ick O. Griffin, Jr., and Anthony P. Nu-gent, Jr., Asst. U. S. Attys., Kansas City, Mo., for appellee.

Before VOGEL, Senior Circuit Judge, and HEANEY and ROSS, Circuit Judges.

ROSS, Circuit Judge.

A question of importance to the effective administration of justice is raised on this appeal—whether a district court rule, which permits a judge to delegate to a magistrate the power to hold preliminary evidentiary hearings in federal and state habeas corpus cases is valid. We give a qualified affirmative answer to that question.

The question arises out of a prisoner petition filed with the United States District Court for the Western District of Missouri. The prisoner, an inmate at the United States Medical Center at Springfield, alleged that he had been denied equal access to the courts due to the inadequacy of the Medical Center's law library and limitations placed on his possession of legal materials essential to pro se representation. The district court referred the petition to a magistrate pursuant to its local Rule 26. The petitioner objected to this referral and requested that the matter be re-referred to the district court. Following pretrial consideration of the pleadings, the magistrate prepared a report and recommended to the United States District Judge that the petition be denied. The recommendation was adopted by the judge. For the reasons we set forth later in this opinion, we find that it is necessary that an evidentiary hearing be conducted to resolve the question of equal access to the court. We are convinced that the district court will again refer this matter to a magistrate for a preliminary evidentiary hearing pursuant to its present local rule unless we hold that it cannot do so. We, therefore, determine the propriety of such a referral.

Noorlander challenges the constitutionality of local Rule 26, Section B.1.b. (5) and its applicability to all habeas

corpus cases emanating from the Springfield Medical Center. This rule provides as follows:

B. Additional Duties and Powers of Full-Time Magistrates.

1. Pursuant to Section 636(b), Title 28, United States Code, each full-time magistrate is assigned and shall perform the following additional duties anywhere in this district and for those purposes is hereby granted plenary powers necessary or desirable to perform those duties:

\*   \*   \*   \*   \*   \*

b. *Civil Proceedings.*

\*   \*   \*   \*   \*   \*

(5) Assisting district judges by preliminary review, pretrial, and prehearing processing of habeas corpus and civil rights petitions, motions, and complaints, and in other petitions and complaints, including, but not limited to, those seeking relief from custody or from conditions of confinement, filed by a convicted or unconvicted person in federal or state custody, under Sections 2241 and 2254, Title 28, United States Code, or other legal procedures, as authorized or directed by other general or special orders of the Court en banc. The magistrate's duties and powers shall include, but are not limited to, the following: (a) permitting the filing of such petitions, motions, and complaints *in forma pauperis*; (b) appointing counsel when authorized by law; (c) making such pretrial and prehearing orders that may be necessary or desirable to obtain relevant information useful in determining the merits of the motion, petition, or complaint and in determining whether a hearing is required; (d) making an order authorizing the transfer of a movant, petitioner, or complainant from the district; and (e) conducting evidentiary hearings. The magistrate shall submit a written report and recommendations, consisting of findings of fact, conclusions of law, and a proposed judgment or order to be entered by a district judge; provided, however, that there shall be a review de novo of any order or finding of a magistrate to which a written exception is filed by a party within five (5) days after notice of the order or finding of a magistrate before a party is required to comply with the order; and provided, further, that there shall be a review de novo of any finding of fact made by the magistrate to which a written exception is filed by a party within ten (10) days after notice of submission of a written report unless the district judge directs otherwise. The review de novo provided for herein shall include an evidentiary hearing when appropriate or required by law.

During the past several years an ever increasing number of prisoner petitions have been filed in federal court by and for inmates of the Springfield Medical Center. One result of this flood of litigation has been a substantial drain of the judicial manpower of the Western District of Missouri. Another result has been a substantial delay in processing these cases. In order to provide for prompt disposition of these cases, this rule was adopted by the district court en banc and positive efforts have been made by the court, the magistrate, the Public Defenders and the Assistant United States Attorney to reduce this backlog.

This Court has heretofore commented upon the general desirability of adopting procedures calculated to give inmates a prompt hearing upon their complaints. *See generally* Bridwell v. Ciccone, 310 F.2d 490 (8th Cir. 1973). We have not, however, heretofore analyzed Rule 26 nor expressed an opinion as to its validity. We note that other circuits have

considered this problem under various fact situations with differing results.[1] We also note that a preliminary draft of the Proposed Rules Governing Habeas Corpus Proceedings and Proposed Rules Governing § 2255 Proceedings permits district courts to authorize magistrates to conduct evidentiary hearings in habeas matters, subject only to the limitation that the magistrate cannot issue an order disposing of a petition.

We look first to the statute, 28 U.S.C. § 636(b), which provides as follows:

> (b) Any district court of the United States, by the concurrence of a majority of all the judges of such district court, may establish rules pursuant to which any full-time United States magistrate, or, where there is no full-time magistrate reasonably available, any part-time magistrate specially designated by the court, may be assigned within the territorial jurisdiction of such court *such additional duties as are not inconsistent with the Constitution and laws of the United States.* The additional duties authorized by rule may include, but are not restricted to—
>
> (1) service as a special master in an appropriate civil action, pursuant to the applicable provisions of this title and the Federal Rules of Civil Procedure for the United States district courts;
>
> (2) assistance to a district judge in the conduct of pretrial or discovery proceedings in civil or criminal actions; and
>
> (3) preliminary *review* of applications for posttrial relief made by individuals convicted of criminal offenses, *and submission of a report and recommendations to facilitate the decision of the district judge having jurisdiction over the case as to whether there should be a hearing.* (Emphasis supplied.)

This section of the statute gives magistrates the power to "preliminar[ily] review" applications for posttrial relief and to submit a "report and recommendations to facilitate the decision of the district judge . . . as to whether there should be a hearing." It does not provide for, *nor prohibit*, the holding of an evidentiary hearing by the magistrate.

It is evident from an examination of the legislative history of § 636(b) that Congress initially had in mind a broader specific delegation of duties to the magistrates; but upon reconsideration, narrowed considerably the scope of such specific delegation, and instead made a general statement that duties could be delegated insofar as such delegation was consistent with the Constitution and laws of the United States. The preliminary draft of § 636(b) reads as follows:

> (b) Any district court of the United States may assign to any United States magistrate appointed by that court the discharge within the territorial jurisdiction prescribed by his appointment of such additional powers or duties as are not inconsistent with the Constitution and laws of the United States. Such additional powers and duties may include, but are not restricted to—
>
> (1) service as a special master in an appropriate civil action;
>
> (2) supervision of the conduct of any pretrial discovery proceeding in a civil or criminal action; and
>
> (3) preliminary *consideration* of applications for post-trial relief made by individuals convicted of criminal offenses. (Emphasis supplied.)

Many criticisms and suggestions were received from legislators and judges. These led to the present language. Judge Walter E. Hoffman, Chief Judge of the United States District Court for the Eastern District of Virginia, favored giving magistrates the power to conduct hearings. He stated:

> Along the same lines as indicated above, I see no valid reason why an

1. *See* Bridwell v. Ciccone, *supra*, n. 4 at page 314.

experienced Magistrate should not be given authority to conduct plenary hearings in habeas corpus proceedings. Of course, we realize that the district judge cannot delegate his judicial duties, but as the Federal Magistrates Act is a counterpart to the system employed by the Bankruptcy Act, it appears to me that a Magistrate could serve as a hearing officer or master for the purpose of taking evidence, making findings, stating conclusions, etc., with the district judge thereafter approving, modifying, reversing or remanding as the need may be. Such a suggestion, if adopted, may require some change in the language used in § 636(b)(3) as the words "preliminary consideration" may not be sufficient. The final order would, of necessity, be entered by the district judge.

Hearings on S. 3475 Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary, 89th Cong., 2d Sess. 96 (1966).[2]

The final indication of legislative intent is:

> Proposed 28 U.S.C. 636(b) mentions three categories of functions assignable to magistrates under its provisions. *The mention of these three categories is intended to illustrate the general character of duties assignable to magistrates under the act, rather than to constitute an exclusive specification of duties so assignable.* The enumerated examples of duties which, under rule of the appropriate district court, may be assigned magistrates are as follows:
>
> (1) A magistrate may be assigned to serve as a special master in an appropriate civil action, under the conditions imposed by pertinent provisions of Federal Rules of Civil Procedure.
>
> (2) Magistrates may be assigned to assist a judge of the district court in the conduct of pretrial or discovery proceedings in civil or criminal actions.
>
> (3) Magistrates may also be assigned the function of reviewing and reporting to district judges upon applications for postconviction relief. (Emphasis supplied.)

H.R.Rep. No. 1629, 90th Cong., 2d Sess. (1968), as quoted in U.S.Code Cong. & Ad.News at p. 4262 (1968).

2. Language in S.Rep. 371, 90th Cong., 1st Sess. 25–27 (1967), the report accompanying the bill, indicates:

> (3) Magistrates may also be assigned the function of reviewing and reporting to district judges upon applications for postconviction relief. It is hoped that assignment of this function to magistrates will afford some degree of relief to district judges and their law clerks, who are presently burdened with burgeoning numbers of habeas corpus petitions and applications under 28 U.S.C. § 2255. A qualified, experienced magistrate will, it is hoped, acquire an expertise in examining these applications and summarizing their important contents for the district judge, thereby facilitating his decisions. Law clerks are presently charged with this responsibility by many judges, but judges have noted that the normal 1-year clerkship does not afford law clerks the time or experience necessary to attain real efficiency in handling such applications.
>
> It seems unwise to your committee to require that the district courts give magistrates duties other than those traditionally performed by commissioners. It is hoped, however, that in their discretion the district courts will find it useful to lighten their own burden in this way.
>
> If district judges are willing to experiment with the assignment to magistrates of other functions in aid of the business of the courts, your committee believes that there will be increased time available to judges for the careful and unhurried performance of their vital and traditional adjudicatory duties, and a consequent benefit to both efficiency and the quality of justice in the Federal courts. Your committee wishes to emphasize that this provision of the act permitting assignments to magistrates cannot be read in derogation of the fundamental responsibility of judges to decide the cases before them; instead it contemplates assignments to magistrates under circumstances where the ultimate decision of the case is reserved to the judge, except in those instances where action can properly be taken by a nonarticle III judge.

In summary, it is apparent that the holding of hearings, at least in postconviction cases, was at first considered by Congress to be one of the duties properly assignable to magistrates. In the face of opposition, Congress left out any specific delegation of the power to hold hearings to the magistrates, and in effect skirted the issue by saying only that the magistrate could perform any function consistent with the Constitution and laws of the United States. We have found no statement by either Senate or House Committee indicating it was their intention to *forbid* the district courts to assign the holding of hearings to the magistrates, and we do not subscribe to the ejusdem generis reasoning of the Sixth Circuit in Wedding v. Wingo, 483 F.2d 1131 (6th Cir. 1973).

Several courts have been confronted with the scope of authority of the magistrates under § 636(b), and predictably have seriously split over the issue. In the following cases, in which magistrates have held evidentiary hearings, courts have not specifically considered the question of the power of the district courts to delegate to the magistrate the authority to hold hearings, but have dealt with the issues raised and have not questioned the magistrate's authority: Dewrell v. Weinberger, 478 F.2d 699 (5th Cir. 1973) (social security case); Gonzalez v. Zelker, 477 F.2d 797 (2d Cir. 1973) (postconviction case); Parnell v. Wainwright, 464 F.2d 735 (5th Cir. 1972) (postconviction case); Remington Arms Co. v. United States, 461 F.2d 1268 (2d Cir. 1972) (summary judgment); Givens v. W. T. Grant Co., 457 F.2d 612 (2d Cir. 1972) (motion to dismiss; magistrate recommended a decision to the district court, and the Second Circuit in its opinion stated that this was a commendable use of the magistrate by the district court); Johnson v. Wainwright, 456 F.2d 1200 (5th Cir. 1972).

The most thoughtful judicial consideration of the problem of magistrates' authority is that of the Seventh Circuit in TPO, Inc. v. McMillen, 460 F.2d 348 (7th Cir. 1972). In that case, the Court was dealing with the question of whether the magistrate, pursuant to a local rule, had the power to decide motions to dismiss and motions for summary judgments. It held, correctly in our view, that the magistrates did not have such authority even though the rule provided for an appeal to the district court judge. The Court stated:

> We need not speculate in regard to what civil functions the magistrate can constitutionally perform, however, since Congress carefully intended that in regard to civil cases the magistrate was not empowered to exercise ultimate adjudicating or decision making.

*Id.* at 359.

Other thoughtful opinions have been written by the Sixth Circuit in Dye v. Cowan, 472 F.2d 1206 (6th Cir. 1972), in Ingram v. Richardson, 471 F.2d 1268 (6th Cir. 1972), and in Wedding v. Wingo, *supra.*

In *Ingram,* the Court held that a district court was not authorized to refer social security disability cases to a magistrate for review and recommendations.

In *Dye,* the Court invalidated an order of the magistrate granting a certificate of probable cause, holding that his action constituted judicial decision making which could only be performed by a judge, except in relation to minor offenses.

And in *Wedding,* the Court held that habeas matters could not be referred to a magistrate for an evidentiary hearing.

The First Circuit stated, in dictum, that:

> [T]he thought that the magistrate, rather than recommending a hearing after a preliminary review, could be empowered to conduct the evidentiary hearing himself and make findings of fact, to be approved by a pro forma laying on of hands by the district court without notice, does not appeal to us in the least.

Rainha v. Cassidy, 454 F.2d 207, 208 (1st Cir. 1972).

The Third Circuit has reserved the question of whether a magistrate can

conduct evidentiary hearings. Henderson v. Brierley, 468 F.2d 1193 (3rd Cir. 1972).

■ We have no disagreement with the results in *Ingram* and *Dye*, and feel that the results in *Rainha* are consistent with those we reach here. We do question *Wedding* insofar as it states in dicta that magistrates are prohibited from holding any evidentiary hearings in habeas corpus matters. To summarize, we do not believe the statute prohibits magistrates from holding hearings in habeas corpus matters if a full opportunity is given for a de novo hearing before an Article III judge in the event that a dispute as to a material issue of fact develops during the course of a hearing and if the final decision-making power is retained in the court.

■ We are convinced that no constitutional provisions are violated by permitting magistrates to conduct preliminary evidentiary hearings in habeas corpus matters provided, of course, that the judge retains and *exercises* the decision-making power with respect to the law and the facts. Rule 26 reserves these powers to the court, with the exceptions hereinafter noted. The rule provides the court with a convenient, quick and efficient method of sorting out the legal and factual issues. It goes further than some rules in giving the magistrate the right to conduct evidentiary hearings, but the hearings are essentially preliminary in nature and designed to assist the trial court in reaching an early and proper result. The rule does not confer the judicial power of the United States to decide cases on someone other than an Article III judge.

■ Nor does the rule, with the exceptions hereinafter noted, violate the due process right of a litigant to have his case heard by an Article III judge. A petitioner is always entitled to take exceptions to material issues of fact and conclusions of law. If he takes exception to the former, an Article III judge will personally take the testimony of the witnesses, determine their credibility and decide for himself what the facts are. If the exceptions are only as to conclusions to be drawn from undisputed material facts, the judge will again decide for himself what the proper procedure is. As we see the rule, it takes one short but important step beyond those already taken by most courts. It permits a magistrate to go beyond the pleadings and records, and to conduct an evidentiary hearing to determine whether there are in fact disputed material issues of fact. If there are some, he can point them out and make *preliminary* findings. If there are none, he can so find. It seems to us that this procedure, if carefully followed, can help the petitioners achieve a prompt and a fair determination of their rights by an Article III judge.

Finally, we do not read Holiday v. Johnston, 313 U.S. 342, 61 S.Ct. 1015, 85 L.Ed. 1392 (1941), as holding that the Constitution prohibits magistrates from conducting evidentiary hearings in all habeas corpus matters. We rather read that case as indicating that the statute being construed by the Court at that time did not permit commissioners to conduct evidentiary hearings in habeas corpus matters. We deal with a different statute here.

■ In the light of our extensive discussion of the power of magistrates, we feel that it is important to point out that local Rule 26 is generally in accord with the standards we have discussed but fails to meet them in the following particulars:

(1) It permits a magistrate to enter an order authorizing the transfer of a petitioner from the district.

(2) It permits a magistrate to deny a petitioner the right to proceed in forma pauperis and to deny the appointment of counsel.

(3) The five-day exception provision to any order or finding, and the ten-day exception provision to a proposed finding of fact are unconstitutionally vague. This vagueness could be corrected by providing that each petitioner have a

ten-day period for filing written exceptions to any proposed order, recommendation, proposed factual findings, or proposed conclusions of law made by the magistrate.

(4) It provides for a de novo review whenever a timely exception to a material fact is made "unless the district judge directs otherwise" and for an evidentiary hearing "when appropriate or required by law." These limitations impose impermissible conditions on the right to a de novo review, and to an evidentiary hearing before the district court to resolve disputed material factual questions.

(5) It fails to provide a method of notifying a petitioner of his rights to a de novo review. Mailing a copy of the local rule to pro se petitioners immediately upon referring a pro se complaint to a magistrate would satisfy the notice requirement.

We turn now to the substantive questions raised on this appeal. Noorlander is presently serving a sentence of five and one-half years pursuant to a plea of guilty to the charge of interstate transportation of forged securities. While incarcerated in the United States Medical Center for Federal Prisoners in Springfield, Missouri, he petitioned the United States District Court for the Western District of Missouri for a writ of habeas corpus wherein he challenged the conditions of his confinement. His argument is essentially that he is denied equal access to the courts due to the limited size of the Medical Center's law library and due to the limitations on the possession of legal materials essential to his pro se representation.

Noorlander originally filed a petition for a writ of habeas corpus alleging constitutional infirmities in his parole proceedings. A Federal Public Defender was appointed to represent him on that petition. Noorlander thereafter filed another petition for a writ of habeas corpus alleging that the Medical Center administration interfered with his right to equal access to the courts by limiting the legal material that he could keep in his possession. The two petitions were consolidated and referred to a magistrate for pretrial review pursuant to local Rule 26.

The Federal Public Defender, who had also been appointed in this case, moved for an extension of time which was granted by the magistrate. During the course of that extension of time, Noorlander filed a pro se motion to amend his petition to include allegations relating to his pro se representation and need for legal materials. Noorlander subsequently represented himself in both habeas actions, although he petitioned the court for appointment of counsel other than the Public Defender's office. That motion was denied on the basis of the magistrate's recommendation which relied on Lee v. Alabama, 406 F.2d 466, 469 (5th Cir. 1968), cert. denied, 395 U.S. 927, 89 S.Ct. 1787, 23 L.Ed.2d 246 (1969):

> [A habeas corpus petitioner has] a right to represent himself or to be represented by counsel, but he ha[s] no right to a hybrid representation partly by himself and partly by counsel.

*See also* United States v. Conder, 423 F.2d 904, 908 (6th Cir. 1970); Brasier v. Jeary, 256 F.2d 474, 478 (8th Cir. 1958).

The two habeas actions were later separated for pretrial hearings, apparently because one tested the fact of confinement while the other tested the conditions of confinement. During the course of the proceedings, Noorlander moved that the case be returned from the magistrate to the court for the evidentiary hearing, challenging the validity of local Rule 26. This motion was overruled by the court upon the recommendation of the magistrate and has been previously discussed in this opinion.

The petition now before us concerns those allegations relating to the conditions of Noorlander's confinement, specifically, his right to an adequate law library and the restrictive nature of regu-

lations prescribing standards for retention of legal materials. The petition concerning the infirmities of his parole proceedings has been appealed as a separate action. Following pretrial consideration of the pleadings, but without holding an evidentiary hearing, the magistrate reported his recommendations to the United States District Judge and this petition for a writ of habeas corpus was denied.

Noorlander relies on Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 2 L.Ed. 718 (1969) in claiming a right to an adequate law library. That case held that it is incumbent upon a state to provide some reasonable means of assistance in a prisoner's preparation of petitions for habeas corpus relief. This principle is equally applicable to the federal government with respect to prisoners incarcerated in federal correction institutions. *See, e. g.,* Williams v. United States Dept. of Justice, Bureau of Prison, 433 F.2d 958 (5th Cir. 1970); Ayers v. Ciccone, 303 F.Supp. 637 (W.D.Mo.1969).

Noorlander advances two independent legal bases in support of his argument that he is denied equal access to the courts. First, he argues that a prisoner has the right to represent himself even though there may be an adequate public defender system. An adequate library is therefore necessary to implement that right. Secondly, he argues that the public defender system at the Medical Center is ineffective and does not meet the burden of providing the reasonable access to the courts set forth in Johnson v. Avery, *supra.*

■■ We turn first to Noorlander's initial ground that his right to self-representation mandates the provision of a law library by the Medical Center. We find this argument without merit. Under Johnson v. Avery, *supra,* the Government need not furnish every means of access to the courts. It need only provide some opportunity for a prisoner to gain equal access to the courts. Thus, if the public defender program at the Medical Center is effectual, the Gov-

ernment has met its burden under Johnson v. Avery regardless of any concomitant right to represent oneself in habeas proceedings. *See* Adams v. United States, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942). But *see* Johnson v. Zerbst, 304 U.S. 458, 468–469, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Only failing the efficacy of the defender program and failing other suitable alternatives is Noorlander entitled to an adequate law library to aid him in his pro se attempts to secure access to the courts and obtain postconviction relief. *See* Gilmore v. Lynch, 319 F.Supp. 105 (N.D.Cal.1970) (three-judge court), aff'd per curiam sub nom., Younger v. Gilmore, 404 U.S. 15, 92 S.Ct. 250, 30 L. Ed.2d 142 (1971).

Thus it is necessary to consider the effectiveness of the federal public defender program at the Medical Center. The Federal District Court for the Western District of Missouri has held that the Medical Center public defender system complied with Johnson v. Avery. After rejecting a minimal lay assistance program, a law student assistance program, and the practice of appointing counsel in meritorious cases, the Court found that a consultant program where a licensed attorney was available for twelve hours per week did comply with Johnson v. Avery. Ayers v. Ciccone, 303 F.Supp. 637, 640 (W.D.Mo.1969). However, that determination alone does not obviate further consideration in subsequent cases.

■ This Court has recently held that an alternative program under Johnson v. Avery must be evaluated on its own to determine whether it is a reasonable alternative to provide access to the courts. McDonnell v. Wolff, 483 F.2d 1059 (8th Cir. 1973). In evaluating the alternative, the Court held that upon remand the Nebraska corrections department has the burden of showing adequacy by evaluating two variables. First, it must be shown what the need for legal assistance is, taking into account the need for assistance in civil rights ac-

tions as well as habeas corpus suits. Secondly, it must be shown that the correction facility is meeting that need.

Here the magistrate noted in his recommendations that

[t]he program presently consists of two qualified counsel who devote full working time to the legal problems of the prisoners in the United States Medical Center. At the inception of this program, at a time when it consisted of but one outside legal consultant devoting 12 hours per week to the legal problems of inmates in the Medical Center it was held . . . that the program complied with Johnson v. Avery.

Arguably, that statement in the magistrate's report is a contemporaneous evaluation of the defender program and therefore adequate under the standards set forth in McDonnell v. Wolff, *supra*. The problem is that no evidence was taken by the magistrate and any such "finding" is dehors the record. Since this is a recurring question (for example, Kirby v. Ciccone, No. 73–1817, now pending in this Court), a full evidentiary hearing should be held to evaluate the adequacy of the library, and in the alternative, the adequacy of the public defender system at the Springfield Medical Center.

Quite apart from his allegations of the inadequacy of the library at the Medical Center, Noorlander attacks the restrictions on the use of the prison library and on the opportunity to retain legal materials essential to his pro se litigation.

In Johnson v. Avery, *supra*, 393 U.S. at 490, 89 S.Ct. at 751, the Court said:

[T]he State may impose reasonable restrictions and restraints upon the acknowledged propensity of prisoners to abuse both the giving and the seeking of assistance in the preparation of applications for relief: for example, by limitations on the time and loca-

tions of such activities and the imposition of punishment for the giving or receipt of consideration in connection with such activities. Cf. Hatfield v. Bailleaux, 290 F.2d 632 (C.A.9th Cir. 1961) (sustaining as reasonable regulations on the time and location of prisoner work on their own petitions).

The regulation here challenged by Noorlander is:

The Institution can assume no responsibility for safekeeing of legal materials belonging to inmates, and should excess material be accumulated over that ordinarily allowed in space available to the inmate in his living quarters, such excess will be screened and sent home or destroyed as preferred by the inmate.

We find that such a regulation is reasonable as one which regulates the type and number of personal possessions of convicts in the Medical Center. *See* Howard v. Swenson, 314 F.Supp. 883 (W.D.Mo.1973), aff'd, 426 F.2d 277 (8th Cir. 1970). *See also* Williams v. United States Dept. of Justice, Bureau of Prison, 433 F.2d 958, 959 (5th Cir. 1970).

This case is remanded to the district court for an evidentiary hearing as to whether or not the Springfield Medical Center is providing an adequate library for the use of its inmates, and whether or not the present use of the public defender system in representation of inmates is an adequate alternative under Johnson v. Avery, *supra*. The evidentiary hearing may be conducted in the first instance by a magistrate if Rule 26B.1.b.(5) is amended prior thereto to conform with the views expressed in this opinion. Otherwise the hearing shall be conducted by the district court. Since the public defender system itself is to be examined, counsel should be appointed for Noorlander independent of the Public Defender's office.

Reversed and remanded with directions.